## COMMONWEALTH INSURANCE COMPANY *versus* JONATHAN CHASE *et al.*

In a policy upon a ship it was stipulated, that the underwriter should not be liable for a partial loss unless it should amount to fifty per cent, and that the assured should not abandon for damage merely, unless the amount, under an adjustment as of a partial loss, should exceed half of the amount insured. The ship was stranded, and the assured offered an abandonment, but the underwriter refused to accept it; and, against the will of the assured, the underwriter, within a reasonable time, got her off and repaired her for less than half of the amount insured, and delivered her to the assured. It was *held*, that the interference of the underwriter in saving and repairing the ship was justifiable, and that inasmuch as he was not to be liable for a loss not exceeding half of the amount insured, he was entitled to recover of the assured the amount of the expenses of saving and repairing the ship.

ASSUMPSIT for goods, wares, and merchandise, money paid, and on an account stated. Plea, the general issue. Trial before *Wilde* J.

The plaintiffs proved, that they insured 4,000 dollars on the defendants' brig Sterling, valued at 6,000 dollars, to, at, and from all places during one year from July 11, 1834, " provided however and it is expressly understood, that the said company shall not be liable for any general average or partial loss on the said brig, unless the sum of such loss, which insurers would be obliged to pay under an adjustment as of a partial loss, should amount to fifty per cent." The policy also provided, " that the acts of the insured or insurers in recovering, saving and preserving the property insured, in case of disaster, should not be considered a waiver or acceptance of an abandonment; " and " that the insured should

not have the right to abandon the vessel for the amount of
damage merely, unless the amount which the insurers would
be liable to pay, under an adjustment as of a partial loss,
should exceed half of the amount insured.'' ·

   In February 1835 the brig, being on a voyage, got ashore
in Lynnhaven Bay, with the loss of both masts, cables and
anchors, &c.  The assured abandoned her to the underwriters
on March 9, 1835.  The abandonment was not accepted, but
the plaintiffs employed one Winslow as an agent, to go to
Lynnhaven bay.  He took measures to save the property,
and in forty-eight hours he got the vessel off the beach, re-
covered the cables and anchors, and towed her into Norfolk,
where she was overhauled and repaired at an expense of less
than 1,300 dollars, including 700 dollars paid for getting her
off the beach.  The repairs were well made.  The agent's ex-
penses and charges were $293·75.  The brig was navigated
to Boston by the former master and crew, under a new en-
gagement made with Winslow, and on her arrival was attached
by the plaintiffs, and afterwards given up to the defendants on
bond, pursuant to the statute.  Her home port was Wiscasset,
in Maine.

   The plaintiffs claimed to recover the expenses paid by
them for agency, repairs, and navigating the vessel to Boston,
amounting to $1626·77.  The defendants objected, on the
ground that the expenses were incurred without their consent,
and against their will, and for the benefit of the plaintiffs
alone ; and that they never made any promise, express or
implied, to pay them.

   The case was submitted to the jury on the evidence, with
general instructions, that they might find for the plaintiffs,
provided they were satisfied that it was necessary for the
plaintiffs to make the attempt to get the vessel off and make
the repairs, in order to ascertain whether they were liable on
the policy, and that it thereby appeared that they were not
liable ; but that the defendants were not liable for repairs and
expenses excepting such as were necessary and were bene
ficial to them.

   If these instructions were wrong, a new trial was to be
granted ; otherwise judgment was to be rendered on the
verdict.

Common<br>wealth·'<br>Ins. Co.<br>v.<br>Chase.

Common-
wealth
Ins. Co.
v.
Chase.

March 15th,
1837.

*C. P. Curtis*, for the defendants, said that there was no express promise to pay this claim ; that such a promise could not be implied, because the expenses were incurred against the will of the defendants, and because there was an express contract, namely, the policy and the premium note, containing the whole agreement ; *Whiting* v. *Sullivan*, 7 Mass. R. 107 ; *Worthen* v. *Stevens*, 4 Mass. R. 448 ; that the assured had a right to let the vessel go to pieces ; that the insurers might take measures to save her, or to ascertain that the loss was not total, but it must be done at their own expense, and under the particular provisions of this policy such interference would not be an acceptance of the abandonment ; *Peele* v. *Merchants Ins. Co.* 3 Mason, 84; that the plaintiffs laid out their money on their own account and to protect themselves from a greater loss ; and that the labor bestowed by them on the defendants' vessel without the defendants' consent, by law became the defendants' property.

*Fletcher*, for the plaintiffs, cited *Colley* v. *Streeton*, 2 Barn. & Cressw. 273 ; *Appleton* v. *Crowninshield*, 8 Mass. R. 340 ; *Sewall* v. *United States Ins. Co.* 9 Pick. 90 ; *Peele* v. *Suffolk Ins. Co.* 7 Pick. 254 ; *Newman* v. *Walters*, 3 Bos. & Pul. 612.

PUTNAM J. delivered the opinion of the Court. The plaintiffs have expended $1626·77, in getting the defendants' vessel off from the beach, repairing her, and navigating her from Norfolk to Boston, where she was given up to the defendants. And the question is, whether the plaintiffs can recover for those expenses and services.

The defendants resist the claim. They say that the plaintiffs interfered, not only without, but against the consent or request of the defendants. They say that the plaintiffs should have rested upon their legal rights of defence in court, upon the evidence which might have been produced touching the vessel as she lay upon the beach.

Now we all think that the plaintiffs were not obliged to lie by and abide by such a result, inasmuch as by their own labor and expenditures they could demonstrate, that the claim which the defendants made upon them for a total loss, was unfounded.

By the express terms of the policy it was agreed, that the assured, the defendants, "should not have the right to abandon the vessel for the amount of damage merely, unless the amount which the insurers would be liable to pay, under an adjustment as of a partial loss, should exceed half the amount insured."

The defendants abandoned the vessel to the plaintiffs, for the alleged reason, that such event had happened. If it was true, then their claims to payment for a total loss were well founded. If it was not true, it is equally clear that they themselves should have borne the loss.

The defendants would maintain, that the validity of the abandonment should be determined by the supposed damage ; the plaintiffs say that the real damage is the criterion. The defendants contend that the question should be decided by evidence as the vessel lay upon the beach, at the time of the abandonment. Now that was precisely what the plaintiffs were, in our opinion, under no legal obligation to permit. They might lawfully do what the underwriters did in the case of *Wood* v. *The Lincoln and Kennebeck Insurance Company*, viz. refuse to accept the abandonment for a total loss, and demonstrate by their own act of relieving and repairing the vessel, that such a claim was unfounded.

In that case, the policy was upon the vessel ; which was returning from Liverpool to Wiscasset, her port of destination, and proceeding up the river Sheepscot, upon which Wiscasset is situated, and was driven by a high wind upon the rocks of the shore about four miles and a half below her port of discharge. On taking the rocks she was overset, so that at high water her hull was nearly covered. While she was in this situation, the plaintiff offered in due form to abandon her to the defendants, which offer was not accepted. The vessel being afterwards disengaged from the rocks, wholly sunk, but the defendants caused her to be weighed and brought to a wharf in her port of discharge, where the plaintiff also lived, in fifteen days after the original misfortune. After her arrival the defendants, having considerably repaired her, offered her to the plaintiff, who refused to receive her. And in that case t was held, that the plaintiff was not entitled to recover for a

Common-
wealth
Ins. Co.
*v.*
Chase.

total loss. It was in that case that the admirable and eminent Chief Justice *Parsons* embodied in five or six pages as much law touching the subject of insurance, as is sometimes spread over as many volumes. And among other cases he put the following by way of illustration, which is very like the case at bar. " If the ship be stranded in a place where sufficient assistance can be obtained, and she may be in a short time got off, and repaired for the prosecution of her voyage ; as neither the ship nor the voyage is lost, there is no ground on which the owner can abandon his ship, and recover for a total loss. And where the stranding is under such circumstances, that the attempt to recover and repair the ship, in a reasonable time for the prosecution of the voyage, may be hazardous, but not hopeless, if the underwriter will engage to pay all the expenses, whatever may be the event, the owner cannot abandon, until he has used such reasonable endeavors to recover his ship, and has eventually failed. And *a fortiori*, if the underwriter will himself undertake, at his own expense, for the owner, the recovery of his ship, and shall succeed, and offer to restore her to him, so that he may seasonably prosecute his voyage, the owner cannot abandon, for neither the ship nor the voyage is lost."

In the case at bar the brig Sterling, which was insured, was valued at $6000. The defendants, the assured, abandoned, because, as they alleged, a damage had happened to her exceeding fifty per cent. by stranding on Lynnhaven beach. The plaintiffs, the assurers, have proceeded, at their own cost, to get the vessel off and repair her and deliver her to the defendants, the assured, at a very small sum or damage, compared with that for which only the assured were entitled to recover.

We think that this right on the part of the underwriter, to act for the preservation of the property insured, is one of great importance. It works well for the cause of truth and justice. It proceeds upon the principle of indemnity, on which the law of insurance rests. If, in the case of *Wood* v. *The Lincoln and Kennebeck Insurance Company*, the right had not been exerted, and the underwriters had been obliged to try the cause by the opinion of witnesses as to the extent of

the damage, they might have been charged with a total loss. And so in the case at bar, witnesses might have been found, without doubt, who would have testified, that in their opinion the Sterling was not worth the trouble and expense of getting her from the beach, and a recovery for a total loss might have been most unjustly obtained.   The positive proof subsequently made by the underwriters, shows the fallacy of the claim on the part of the assured.

The case of *Peele* v. *The Suffolk Insurance Company*, recognised and was governed by the case of *Wood* v. *The Lincoln and Kennebeck Ins. Co.*   The opinion of the late Chief Justice *Parker* may be seen in 7 Pick. 256.   " The underwriter is not obliged to accept the offer to abandon.   He may take the chance of the facts as they may appear, and he may, we think, though this right has been questioned, take her into his own possession and repair her, the assured refusing to do it, and if he can do this at an expense less than half her value, he may restore her to the assured, and thus avoid paying for a total loss."

The policy itself provides " that the acts of the assured or insurers in recovering, saving, and preserving the property insured, in case of disaster, shall not be considered a waiver or acceptance of an abandonment."   The legal construction would have been according to this express provision.

In the case at bar the underwriters were not to be liable unless for a loss exceeding fifty per cent., which has not happened.   If they had been liable for a partial loss to the amount which they have paid in recovering and repairing the vessel, there would be no claim on their part to recover it, for the expenditure would have been in fulfilment and discharge of their contract.   But here the defendants, the assured, contend that the plaintiffs have paid this money at their own risk and for their own account, and have no legal or equitable claim to recover it back.   We think however that the plaintiffs have a right to recover, in the nature of a claim for salvage.

*Hartford* v. *Jones*, 1 Ld. Raym. 393.   That was trover for goods.   The defendants pleaded that they were in a ship, and that the ship took fire, and that he hazarded his life to save them, and he was ready to deliver them, if the plaintiff would

pay him for salvage. And it was held by *Holt* C. J., that the defendant was entitled to retain for the salvage.

So in *Newman* v. *Walters*, 3 Bos. & Pul. 612, where a ship being in danger, the captain and part of the crew made their escape, and a passenger, at the request of the rest of the crew, took the command and brought the ship safe to port, it was held that the passenger was entitled to sue the owner for the salvage. In that case the merits of the passenger were acknowledged, and two of the judges decided on the ground of ratification. But the chief justice, Lord *Alvanley*, put the case upon the ground that the passenger had assumed to do more than he was called upon by his duty to do, for the benefit of the defendant, in saving his property, and was therefore entitled to recover.

The case of *Colley* v. *Streeton*, 2 Barn. & Cressw. 273, is, upon principle, much like the case at bar. A. held premises under a lease containing a clause of reëntry for want of repairs, and afterwards underlet to B., who undertook to repair in three months after notice for that purpose. The premises being out of repair, A.'s landlord threatened to insist upon the forfeiture if they were not repaired, and A. gave notice to B. to repair. At the expiration of three months, the premises remaining out of repair, A. entered and repaired. Held that he might recover from B. the money which was expended on that occasion.

So in the case at bar, the defendants were bound by their contract to sustain the damage to their vessel, which should be less than fifty per cent. The defendants impliedly undertook to do their duty in that behalf, to save the plaintiffs harmless from the payment of any damage which should not exceed fifty per cent. But they did not so do, but endeavoured to recover a total loss, and the plaintiffs paid the money now in question, to save themselves from that unfounded claim ; as the lessee in the case cited paid for the repairs which his sublessee should have made, to prevent the landlord from exercising his right of entry upon the lessee for not repairing.

And this legal consequence arises from the relative rights and duties of the parties under the contract of insurance. Until the abandonment the assured is to do all things necessary and proper for the safety of the property. After the

abandonment well made, it becomes the affair of the under-writer to take care of the concern as he would do of his own property, for the abandonment legally made and for sufficient cause, transfers or vests the property in the underwriter. But where the validity of the abandonment is contested on the ground that the facts on which it is made do not exist, each party must act upon his peril, and his rights will be necessarily ascertained as the abandonment shall be eventually supported or not.

In the case at bar it is very clear that the plaintiffs have done and paid for the benefit of the defendants, what they were bound to have done themselves, without calling upon the plaintiffs ; and having received the benefit, the law will imply a promise to make a compensation.   They had no right to prevent the plaintiffs from making the disbursements for the defendants, which the defendants were bound to have made themselves, for the relief of the plaintiffs from an unjust claim upon the policy.

It was not, in a legal sense, a voluntary payment on the part of the plaintiffs, making the defendants debtors without their consent.   It was more like *Exall* v. *Partridge et al.* 8. T. R. 308, where the landlord distrained the plaintiff's carriage on the demised premises for rent due from the defendants, and the plaintiff was obliged to pay the rent to obtain his carriage. It was held that he was entitled to recover of the defendants. Yet in truth they had made no request of the plaintiff to pay the rent to their landlord, and it was strongly contended that there was no implied promise.   But the court held, that as the plaintiff could not have relieved himself from the distress without payment of the rent which the defendants ought to have paid, he was entitled to recover, and that the law would imply the promise under such circumstances.

Now it is clear beyond any controversy, that the defendants were bound by their contract, to bear all losses and damage less than fifty per cent. ; and if they had done their duty, the plaintiffs would have been saved from all trouble and expense.

Under the circumstances of this case as found in the report of the judge, we are all of opinion that the judgment should be rendered for the plaintiffs.

*Judgment according to verdict.*